UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARTY AGEE and CAROLINA AGEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| HARTFORD ACCIDENT AND INDEMNITY COMPANY, | ) | 3:22-CV-1697-G |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion to dismiss, docket entry 24, the third amended complaint for failure to state a claim. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**. The Agees' request to abate their extra-contractual claims is also **DENIED**.

### I. BACKGROUND

This is the court's second memorandum opinion in this case, and the court therefore incorporates from its previous opinion the factual background of this motion. *See generally* Memorandum Opinion and Order (docket entry 22). In sum, on September 24, 2019, Joseph Barrera ("Barrera") rear-ended the plaintiff Marty

Agee ("Agee"), who was standing behind his vehicle, and the vehicle itself. Plaintiffs' Third Amended Complaint ("Third Amended Complaint") (docket entry 23) ¶¶ 3.02, 6.03. At the time of the collision, Agee had underinsured motorist ("UIM") insurance coverage under a commercial automobile policy issued to his employer. *Id.* ¶ 5.01. With the defendant-insurer's consent, Agee had already settled his claims against Barrera before filing this suit. *Id.* ¶ 5.04. The defendant Hartford Accident and Indemnity Company ("Hartford") denied Agee's UIM claim for damages that exceeded the Barrera settlement. *Id.* ¶¶ 5.05-5.07. This dispute arises from Hartford's denial of Agee's and his wife Carolina Agee's (collectively, "the Agees") claim. *Id.*

Previously, Hartford had filed a motion to dismiss the Agees' second amended complaint for failure to state a claim. Defendant Hartford Accident and Indemnity Company's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket entry 11). The court granted the motion because the Agees failed to plead a predicate declaratory judgment claim or sufficient facts for UIM benefits. Memorandum Opinion and Order at 7-9. The Agees were given the opportunity to amend their complaint to cure these defects. *Id.*

On January 9, 2023, the Agees filed their third amended complaint. Third Amended Complaint. On January 30, 2023, in lieu of an answer, Hartford filed

another motion to dismiss. Defendant Hartford Accident and Indemnity Company's Motion to Dismiss Plaintiffs' Third Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) (docket entry 24); Defendant Hartford Accident and Indemnity Company's Brief in Support of Motion to Dismiss Plaintiffs' Third Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Brief in Support") (docket entry 25). The Agees responded to the motion on February 20, 2023. Plaintiffs' Response to Defendant's Motion for Dismiss Plaintiffs' Third Amended Complaint for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Response") (docket entry 26). Hartford filed its reply on March 6, 2023. Defendant Hartford Accident and Indemnity Company's Brief in Support of Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss ("Reply") (docket entry 28). The motion is now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiffs must

"plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

## B. Application

### 1. Scope of Amended Complaint

First, Hartford argues that the Agees' third amended complaint exceeds the court's leave to amend their complaint. Brief in Support at 6; *see* Memorandum Opinion and Order at 8. The court, in its previous opinion, granted Hartford's motion to dismiss but permitted the Agees the opportunity to replead. Memorandum Opinion and Order at 9. The court specifically ordered: "The plaintiffs shall have twenty days from the date of this order to replead their claims. Failure to file and serve a third amended complaint within that time, seeking a declaratory judgment as to the tortfeasor's liability and underinsured status, will result in dismissal of this suit without further notice." *Id.* Hartford argues that the

plaintiffs go beyond the court's leave to "once again assert extra-contractual claims for bad faith and unspecified violations of the Texas Insurance Code." Brief in Support at 6. Additionally, Hartford argues that the plaintiffs do not attempt to allege an independent injury. *Id.* Thus, Hartford contends, all of the Agees' claims except for the declaratory judgment claim should be dismissed.

  The court disagrees that the Agees have inappropriately exceeded the leave granted them to amend their complaint. The court ordered the Agees to amend their complaint to include a "declaratory judgment [claim] as to the liability and underinsured status [of the tortfeasor.]" Memorandum Opinion and Order at 8. Alternatively, the plaintiffs were permitted to attempt to allege an independent injury, but were not required to do so. *Id.* Here, the Agees filed their third amended complaint with a declaratory judgment claim, and the court concludes that the plaintiffs have satisfied the court's order. Further, the Agees had pleaded extra-contractual claims in the second amended complaint so these claims are not new to the litigation. *See* Plaintiffs' Second Amended Original Complaint (docket entry 10) ¶ 4.05; *see also* Third Amended Complaint ¶ 6.03. Because the court did not limit how the plaintiffs could replead, the court will not strike the contractual and extra-contractual claims on this basis alone.

### *2. Breach of contract and extra-contractual claims*

Second, Hartford argues that the Agees' breach of contract claim should be dismissed because Agee has not established that Hartford has an obligation to pay UIM benefits. Brief in Support at 8-9. Because Hartford is not obligated to pay UIM benefits until the plaintiffs establish that their damages exceed the tortfeasor's available insurance, the Agees' breach of contract claim is not ripe and should be dismissed for failure to state a claim upon which relief can be granted. *Id.* at 9. The plaintiffs contend they do not assert a breach of contract claim. Response at 8-9. Upon review of the arguments and the third amended complaint, the court concludes that the third amended complaint does not assert a breach of contract claim. *See generally* Third Amended Complaint.

Consequently, the plaintiffs' extra-contractual claims are dismissed because the plaintiffs do not assert a breach of contract claim. The Agees's extra-contractual claims include claims of bad faith and violations of the Texas Insurance Code. Third Amended Complaint ¶¶ 6.03(j)-(k) ("[P]laintiffs are entitled to separate additional damages from [Hartford] for bad faith and violations of the Texas Insurance Code including statutory, punitive and/or exemplary damages, and attorneys fees . . . ."). Absent a breach of contract claim, the Agees cannot under Texas law assert their extra-contractual claims. The general rule in Texas is that "an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right

to those benefits under the policy." *USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018).

This rule comes from the Texas Supreme Court's opinion in *Republic Insurance Company v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). The insurer in *Stoker* originally relied on an invalid reason to deny the insured's claim but later asserted a valid reason for denying the claim. See *id.* at 339. The insured sued for breach of contract and bad faith. *Id.* at 339-40. The trial court granted summary judgment for the insurer on the breach of contract claim because the policy did not cover the claim. *Id.* at 339. At trial, however, the jury found the insurer liable for the extra-contractual claims, and the trial court awarded policy benefits as "extra-contractual damages." *Id.* at 339-40. The Texas Supreme Court reversed the judgment and held that "as a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Id.* at 341. Since *Stoker*, the Texas Supreme Court has applied this rule to other types of extra-contractual violations, confirming the principle that "an insured who sues an insurer for statutory violations can only recover damages 'caused by' those violations." *Menchaca*, 545 S.W.3d at 490-491; see also *Progressive County Mutual Insurance Company v. Boyd*, 177 S.W.3d 919, 921 (Tex. 2005) (per curiam) (holding that a trial court's take-nothing judgment on a contract claim "negate[d]" the extra-contractual claims).

Hartford argues that the extra-contractual claims must be dismissed because the plaintiffs fail to plead either "a right to receive benefits under the policy" or "an injury independent of a right to benefits." Brief in Support at 11 (citing *In re State Farm Mutual Automobile Insurance Company*, 629 S.W.3d 866, 872-73 (Tex. 2021) (orig. proceeding)). In response, the Agees merely state that they do not assert a breach of contract claim. Response at 9 ("There is no breach of contract claim and there cannot be one until [the] Court properly determines the actual claim of declaratory judgment."). Thus, Hartford argues, Agees' extra-contractual claims should be dismissed because the Agees voluntarily removed their breach of contract claim. Reply at 3. Without a breach of contract claim, Hartford argues, the plaintiffs cannot establish that Agee has "a right to receive benefits under the policy," *In re State Farm*, 629 S.W.3d at 872-73, to hold Hartford liable for bad faith or statutory violations. Reply at 4-5.

Hartford cites *State Farm* to illustrate its argument. *Id.* at 3. In *State Farm*, the plaintiffs chose only to assert extra-contractual claims, not a breach of contract claim. *In re State Farm*, 629 S.W.3d at 871. The Texas Supreme Court held that the trial court's award of extra-contractual damages was predicated on the insureds establishing a right to policy benefits. *Id.* at 872-76. Therefore, the Texas Supreme Court reversed the judgment because the plaintiffs had not proven that the insurer had breached the contract, or alternatively, that the denial of policy benefits was an

independent injury. *Id.* at 872-76. Here, Hartford argues that the Agees have not pled a breach of contract claim or pled an injury independent of the insurance contract, thus the claims should be dismissed. Reply at 3-4. The court agrees, and the plaintiffs make no argument that they have pled a breach of contract claim or an independent injury. *See generally* Response.

The Agees contend, however, that their extra-contractual claims are ripe under the Fifth Circuit's opinion in *Hamburger v. State Farm Mutual Auto Insurance Company*, 361 F.3d 875 (5th Cir. 2004). Response at 12. The *Hamburger* court reasoned that under Texas law the "insured does not have a bad faith cause of action against the insurer for the insurer's failure to attempt a fair settlement of a UIM claim after there is a judgment against the insurer" so "an insured such as Hamburger could never successfully assert a bad faith claim against his insurer for failing to attempt a fair settlement of a UIM claim." *Hamburger*, 361 F.3d at 880-81 (citing *Mid-Century Insurance Company of Texas v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002)). Turning to the Texas Supreme Court case on which *Hamburger* relies, it is clear that *Boyte* does not except extra-contractual claims from the rule requiring plaintiffs to plead breach of contract claims. See *Boyte*, 80 S.W.3d at 549. Instead, *Boyte* holds that is there is no statutory duty to settle insurance claims post-judgment "[w]hen the only legal relationship between the parties after judgment is debtor and creditor." See *id.* Moreover, the Fifth Circuit in *Hamburger* in 2003 reasons that "[a]bsent a more clear

indication from Texas courts . . . ." *Hamburger*, 361 F.3d at 880.  Here, the court has the benefit of almost twenty years of Texas state precedent indicating that extra-contractual claims cannot be asserted without the predicate breach of contract claim. See *In re State Farm*, 629 S.W.3d 871; *Menchaca*, 545 S.W.3d at 490-491.  The court will apply settled Texas law by following the Texas Supreme Court's precedent in *State Farm* and *Menchaca*.  In conclusion, the extra-contractual claims are dismissed because they are claims for which the court cannot grant relief.[*]

### 3.  Loss of Consortium

Next, Hartford argues that Mrs. Agee's claims for loss of consortium and household services should be dismissed because she was not a bystander or involved in the vehicular accident.  Brief in Support at 17-18.  The plaintiffs, in turn, argue that they are entitled to damages under the UIM policy for Mrs. Agee's losses because her claim is derivative of the injuries sustained by Agee.  Response at 9-10. The court agrees with the plaintiffs.

Although loss of consortium is not considered a "bodily injury" under the terms of an automobile insurance policy, loss of consortium is still actionable under

---

[*] The Agees request that the court abate their extra-contractual claim until the declaratory judgment claim is concluded.  Response at 14.  Because abatement would be futile in the absence of a breach of contract claim, the court declines to do so.  Additionally, the plaintiffs makes no argument why abatement is appropriate as it "would unduly prolong the litigation . . . ."  See *Bays v. State Farm Mutual Automobile Insurance Company*, No. 3:98-CV-3027-D, 1999 WL 68648, at *2 (N.D. Tex. Feb. 4, 1999) (Fitzwater, J.).

the injured spouse's insurance policy. *McGovern v. Williams*, 741 S.W.2d 373, 376 (Tex. 1987). In *McGovern*, the Texas Supreme Court held "that when only one person is actually involved in an automobile accident and sustains bodily injury in that accident, [the statutory policy would] limit[] recovery for any and all claims to the 'per person' [] limit." *Id.* This does not deprive a spouse of his or her claim, however, because it merely makes "a consortium claim and the bodily injury claim subject to the 'per person' liability provided in the insurance policy." *Id*.

Hartford cites *Haralson v. State Farm Mutual Automobile Insurance Company*, 564 F. Supp. 2d 616 (N.D. Tex. 2008) (Kaplan, M.J.), to support its theory that the court cannot grant damages predicated on Mrs. Agee's loss of consortium. Brief in Support at 17. The court is not persuaded by Hartford's argument because the only plaintiff in *Haralson* was a non-injured spouse seeking loss of consortium damages, and because the damages are derivative claims of a spouse's injuries, the *Haralson* court set aside the jury award for loss of consortium. See *Haralson*, 564 F. Supp. 2d at 619, 626-27. In *Haralson*, the plaintiff's husband sustained injuries in a car accident, and the couple settled with the tortfeasor prior. *Id.* at 618. The wife filed a separate claim on the UIM policy for her, *inter alia*, loss of consortium and household services. *Id.* at 621. In relevant part, the jury awarded the wife $15,000 for her loss of consortium claim and $1,000 for her loss of household services. *Id.* at 626. The court set aside the jury verdict regarding the loss of consortium and loss of household

services because the wife's claim was "a derivative claim that arises solely as a consequence of injuries to a spouse." *Id.* (citing *McGovern*, 741 S.W.2d at 374). Thus, the claim would be the husband's "bodily injury," and the wife could not recover damages in her own independent suit.  See *id.*  Here, there is not a similar limitation as both the Agees are party to this suit.  Consequently, Hartford's motion to dismiss the loss of consortium and loss of household services claims is denied.

### 4.  Negligence Per Se

The plaintiffs allege that Barrera's negligence amounts to negligence *per se*, resulting from violations of the Texas Transportation Code.  Third Amended Complaint ¶ 4.02.  These violations include sections 545.062, 545.351, 545.401, and 544.004 of the Texas Transportation Code.  See *id.*  Hartford moves to dismiss these negligence *per se* claims because these statutes do not impose a mandatory standard of conduct.  Brief in Support at 18-19.  The Agees did not respond to Hartford's arguments to dismiss their negligence *per se* claims.  *See generally* Response.

Negligence *per se* is a common law doctrine where courts establish the duty of care by reference to "a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997).  But not all penal statutes can serve as a basis for a negligence *per se* claim. "Where a statute incorporates the ordinarily prudent person standard, negligence per se does not apply because the statute does not establish a specific standard of

conduct different from the common-law standard of care." *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App. – Texarkana 2002, pet. denied); *Waring v. Wommack*, 945 S.W.2d 889, 891 (Tex. App. – Austin 1997, no writ) (holding that violating a statutory duty to yield to oncoming traffic while turning is not negligence *per se* because it "comes within the class of statutes in which the common-law standard of the reasonably prudent man must be used."). Courts assess whether a penal statute incorporates the reasonably prudent standard by examining whether "the statute imposes a conditional duty" instead of "an absolute duty." *Miranda-Lara v. Rebert*, No. 09-18-00325-CV, 2020 WL 5099968, at *4 (Tex. App. – Beaumont, August 31, 2020, no pet.) (memo. op.) (citing *Babiy v. Kelley*, No. 05-17-01122-CV, 2019 WL 1198392, at *3 (Tex. App. – Dallas, Mar. 14, 2019, no pet) (mem. op.)). In transportation code statutes specifically, Texas courts ask whether the statute allows "for the driver to make a discretionary call." *Miranda-Lara*, 2020 WL 5099968, at *4. When a statute mandates drivers to exercise their own judgment, such as proceeding only when it is safe, the statute reflects an ordinary standard of care and negligence *per se* is not applicable. *Supreme Beef Packers*, 67 S.W.3d at 456. In contrast, when a statute requires all drivers to stop at a red flashing light, without any discretion, the statute defines a mandatory standard of conduct instead of standard of care. *Id.* In such a case, "it is redundant to submit a question on the statutory standard or to instruct the jury regarding it, and the negligence per se

- 14 -

conduct different from the common-law standard of care." *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App. – Texarkana 2002, pet. denied); *Waring v. Wommack*, 945 S.W.2d 889, 891 (Tex. App. – Austin 1997, no writ) (holding that violating a statutory duty to yield to oncoming traffic while turning is not negligence *per se* because it "comes within the class of statutes in which the common-law standard of the reasonably prudent man must be used."). Courts assess whether a penal statute incorporates the reasonably prudent standard by examining whether "the statute imposes a conditional duty" instead of "an absolute duty." *Miranda-Lara v. Rebert*, No. 09-18-00325-CV, 2020 WL 5099968, at *4 (Tex. App. – Beaumont, August 31, 2020, no pet.) (memo. op.) (citing *Babiy v. Kelley*, No. 05-17-01122-CV, 2019 WL 1198392, at *3 (Tex. App. – Dallas, Mar. 14, 2019, no pet) (mem. op.)). In transportation code statutes specifically, Texas courts ask whether the statute allows "for the driver to make a discretionary call." *Miranda-Lara*, 2020 WL 5099968, at *4. When a statute mandates drivers to exercise their own judgment, such as proceeding only when it is safe, the statute reflects an ordinary standard of care and negligence *per se* is not applicable. *Supreme Beef Packers*, 67 S.W.3d at 456. In contrast, when a statute requires all drivers to stop at a red flashing light, without any discretion, the statute defines a mandatory standard of conduct instead of standard of care. *Id.* In such a case, "it is redundant to submit a question on the statutory standard or to instruct the jury regarding it, and the negligence per se

- 14 -

standard is subsumed under the broad-form negligence question." *Smith v. Central Freight Lines, Inc.*, 774 S.W.2d 411, 413-15 (Tex. App. – Houston [14th Dist.] 1989, writ denied); *Southern Pacific Company v. Castro*, 493 S.W.2d 491, 495, 497-98 (Tex. 1973) (holding when a statute requires a driver to stop at a train tracks once he hears "the statutory audible signal" or sees "the train . . . plainly visible," the statute creates a mandatory standard of conduct that supports a negligence *per se* claim). The court will now address in turn the statutes the Agees' claim Barrera violated. *See* Third Amended Complaint ¶ 4.02.

On a highway, section 545.062 requires drivers to "maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway." TEX. TRANSP. CODE § 545.062(a). Texas intermediate appellate courts have held that section 545.062 "imposes on the driver the same duty of reasonable care as that imposed under the common law." *Benavente v. Granger*, 312 S.W.3d. 745, 749 (Tex. App. – [1st Dist.] Houston 2009, no pet.)("[A] breach of section 545.062 does not constitute negligence per se."); *Roberts v. Staples*, 644 S.W.3d 738, 743 (Tex. App. – Texarkana 2022, no pet.) (same). "At its core, this provision requires a driver to examine the context in which he is driving and conduct himself in a manner that allows him to 'safely stop' should he need to." *Ordonez v.*

*Ausby*, No. EP-21-CV-00077-DCG, 2023 WL 310442, at *9-10 (W.D. Tex. Jan. 18, 2023) (citing TEX. TRANSP. CODE § 545.062(a)). The court concludes that the discretion required by section 545.062 invokes the common law standard of care. The court thus agrees with the weight of Texas intermediate appellate courts that have held that section 545.062 of the Texas Transportation Code cannot support a negligence *per se* claim.

Next, section 545.351 states that "[a]n operator may not drive at a speed greater than is reasonable and prudent under the circumstances then existing." TEX. TRANSP. CODE § 545.351(a). The common law's ordinary standard of care is expressly incorporated into section 545.351, and therefore, a negligence *per se* claim is not cognizable. *Trinh v. Hunter*, No. SA-20-CV-00725-JKP, 2022 WL 6813293, at *6 (W.D. Tex. Oct. 11, 2022) (citing *Gore v. Gore*, 233 S.W.3d 911, 913 (Tex. App. – Beaumont 2007, pet. denied)).

Section 545.401 creates an offense when an operator "drives a vehicle in wilful or wanton disregard for the safety of persons or property." TEX. TRANSP. CODE § 545.401(a). Because the statute does not mandate specific conduct, see *Supreme Beef Packers*, 67 S.W.3d at 456 (distinguishing reasonable care standard from "mandatory standard of conduct" in statutes that support negligence *per se* claims), section 545.401 does not create an appropriate standard of care for negligence *per se*, *Merritt*, 940 S.W.2d at 607. The court agrees with the other district courts that have

addressed this identical issue, see, *e.g., Ordonez*, 2023 WL 310442, at *7; *Salas v. United States*, No. DR-22-CV-00007-AM, 2023 WL 2753895, at *3-4 (W.D. Tex. Mar. 31, 2023), and concludes that section 545.401 "imposes a duty that is not absolute, but rather is conditional," see *Cudworth v. South Texas Paisano Construction Co.*, 705 S.W.2d 315, 317 (Tex. App. – San Antonio 1989, writ ref'd n.r.e.) (analyzing a different statute). Therefore, a violation of section 545.401 cannot constitute negligence *per se*.

The final statute cited by the Agees is section 544.04 for violating HOV rules and regulations, namely operating a vehicle in the HOV lane when Barrera was the only occupant in the car. Third Amended Complaint ¶ 4.02. The correct citation is section 544.004, which requires drivers to "comply with an applicable official traffic-control device" unless "otherwise directed" by a police or other traffic official. TEX. TRANSP. CODE § 544.004(a)-(b). Hartford does not cite a case that has addressed this specific section of the transportation code. *See* Brief in Support at 18-19; *see also* Reply at 9-10.

Unlike the other statutes the Agees cite for their negligence *per se* claims, section 544.004 mandates drivers to "comply" with traffic control devices instead of requiring drivers to act as a prudent person. *Compare* TEX. TRANSP. CODE § 544.004; with *id.* 545.351(a) (requiring drivers to drive at a speed that is "reasonable and prudent under the circumstances then existing"); and *id.* § 545.062(a) (requiring

drivers to maintain a distance, "considering the speed of the vehicles, traffic and the conditions of the highway" so that the operator can "safely stop"); and *id.* § 545.401(a) (prohibiting the operation of a vehicle with "wilful or wanton disregard for the safety or persons or property"). Although section 544.004 cannot be enforced against an alleged violator if the traffic device is not "in a proper position and sufficiently legible to an ordinarily observant person," *id.* § 544.004(b), this enforcement mechanism does not transform the mandate from an absolute direction to an instruction with discretion. Drivers are required by section 544.004 to comply with traffic-control devices unless otherwise directed by a traffic or police officer or the operator is then-currently operating an authorized emergency vehicle. *Id.* § 544.004(a)(1)-(2). In other words: there is no room for discretion under section 544.004, and compliance is mandatory unless exempted. See *id.*

It is illustrative to look to other areas of the Texas Transportation Code that also regulates behavior around traffic signs. Section 544.007, for example, governs driving through intersections. *Id.* § 544.007. In relevant part, section 544.007 states that when a driver is approaching an intersection, he "shall yield the right-of-way to other vehicles and to other pedestrians lawfully in the intersection," and "[a]n operator of a vehicle facing a green arrow signal . . . may cautiously enter the intersection." *Id.* § 544.007(b)-(c). This permissive language and discretion on right-of-way analysis does not create a special standard of care and could not be the basis

for a negligence *per se* claim.  *Ochoa v. P.A.M. Cartage Carriers, LLC*, No. 5:17-CV-787-XR, 2019 WL 360528, at*6 (W.D. Tex. Jan. 29, 2019).  Here, however, section 544.004 does not allow a driver any discretion.  It commands the driver to comply with the traffic control device or an officer's directions.  *See* TEX. TRANSP. § 544.004.  Therefore, the court concludes that section 544.004 is the type of statute that mandates specific conduct and supports a negligence *per se* claim.  In sum, the Agees' negligence *per se* claims will be dismissed in part, regarding sections 545.062, 545.351, and 545.401 but not as to section 544.004.

### III.  CONCLUSION

Hartford's motion to dismiss the Agees' third amended complaint is **GRANTED IN PART** and **DENIED IN PART**.  Hartford's motion to dismiss the Agees' extra-contractual claims and the negligence *per se* claims based on sections 545.062, 545.351, and 545.401 of the Texas Transportation Code is **GRANTED**.  Hartford's motion to dismiss the remaining claims is **DENIED**.  The Agees' request for an abatement is also **DENIED**.

    **SO ORDERED**.

July 18, 2023.

                                                _____
                                                **A. JOE FISH**
                                                **Senior United States District Judge**